United States District Court
Southern District of Texas
**ENTERED**
February 05, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| FLOR ESTHELA CERDA DE RUIZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 7:22-CV-00434 |
| | § | |
| ALMANZA VILLARREAL | § | |
| FORWARDING, LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is an employment discrimination lawsuit brought by a plaintiff alleging that her employer unlawfully terminated her because of her and her daughter's medical conditions. Before the Court are four dispositive motions filed by Defendant Almanza Villarreal Forwarding, LLC. Defendant has filed a partial motion to dismiss Plaintiff Flor Esthela Cerda de Ruiz's state law claims under Rule 12(b)(6) (Dkt. No. 43), two partial motions for judgment on the pleadings as to her ADA claims (Dkt. Nos. 49, 52), and a partial motion for summary judgment as to her ADA claims (Dkt. No. 55). After careful consideration of the Motions and the responsive briefings, the Court **GRANTS** the motion to dismiss the state law claims (Dkt. No. 43) and **DENIES** the remaining Motions (Dkt. Nos. 49, 52, 55).

**I.    FACTUAL AND PROCEDURAL BACKGROUND[1]**

Since 1999, Plaintiff Flor Esthela Cerda de Ruiz ("Ruiz") had been employed by Defendant Almanza Villarreal Forwarding, LLC ("Almanza"), where Monica L. Guzman Almanza ("Ms.

---

[1] In addition to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) this case also concerns two motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), which are "subject to the same standard" as Rule 12(b)(6) motions, as well as a motion for summary judgment. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). Accordingly, the facts presented herein are as alleged by Plaintiffs, for purposes of the Rule 12(b)(6) and Rule 12(c) motions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted) (internal quotation marks omitted) ("To survive a motion to dismiss,

Guzman") and Cesar F. Guzman Almanza ("Mr. Guzman") both serve as directors. Dkt. No. 1 at ¶¶ 13–14. Ruiz worked in accounts receivable. *Id.* at ¶ 13. Both Ruiz and her daughter had medical issues. Ruiz was diagnosed with diabetes around 2008, and in early April 2020, her doctor informed her that she was at high risk for serious illness from COVID-19 due to her diabetes. *Id.* at ¶¶ 15, 17. Her daughter, Aryanna Ruiz, was born in 2017 and began experiencing medical issues in 2019, after which she was diagnosed with asthma and lung problems which required ongoing medical attention. *Id.* at ¶ 16. Around March or April 2020, Ruiz's daughter's daycare facility informed Ruiz that her daughter could no longer attend daycare because of COVID-19 policies. *Id.* at ¶ 22. Ruiz notified Mr. Guzman of this change in her daughter's daytime care. *Id.* On April 28, 2020, Ruiz asked Mr. Guzman whether she could work from home to reduce her exposure to COVID-19 in light of her and her daughter's health issues, on the advice of her doctor and her daughter's doctor. *Id.* at ¶ 18. To Ruiz's knowledge, Almanza permitted other employees who did not have health issues or children with health issues to work from home. *Id.* at ¶ 20. But instead of initiating a process to determine whether such an accommodation was reasonable,[2] Mr. Guzman denied the request. *Id.* at ¶ 20.

In light of her daughter's daycare situation and the multiple doctors' recommendations that she work from home, Ruiz then asked Mr. Guzman if she could take six (6) weeks of leave under the Family and Medical Leave Act or another law. *Id.* at ¶ 23. Mr. and Ms. Guzman denied the request, stating that the FMLA did not apply to her. *Id.* She followed up again on May 21, 2020, emailing Mr. Guzman and reminding him of her and her daughter's medical conditions, including that she had an appointment with a diabetes specialist the next day. *Id.* at ¶ 24. On that day, Ruiz

---

a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."). And for purposes of resolving summary judgment, the Court will resolve doubts and reasonable inferences regarding the record in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

[2] In her Complaint, Ruiz submits that she "could perform her billing and accounting responsibilities while working from home without undue burden to her employer." Dkt. No. 1 at ¶ 19.

also requested leave with Ms. Guzman, who told Ruiz that she could take two (2) weeks paid time off, followed by an additional four (4) weeks of unpaid leave, and to call Ms. Guzman back in June to confirm whether, of the four (4) weeks of unpaid leave, Ruiz would need the final two (2) weeks. *Id.* at ¶ 25. Ms. Guzman then instructed Ruiz to submit the leave request in Almanza's online system, and Ruiz did so. *Id.*

Ruiz used her accrued time off and took paid leave beginning May 22, 2020, with June 5, 2020 as the final day of the two (2) week period. *Id.* at ¶ 26. Ruiz called Mr. Guzman on June 4, 2020, and Ms. Guzman on June 5, 2020, and informed them that she would continue to take unpaid leave. *Id.* at ¶ 28. But in July 2020, Ruiz learned indirectly that Almanza had terminated her, after she received a July 10, 2020 letter from her retirement account provider regarding her employment change and a July 14, 2020 letter from her life insurance provider that Almanza would no longer be paying her premium. *Id.* at ¶ 29. Later, in proceedings before the EEOC, Almanza represented that it considered Ruiz to have abandoned her job as of June 8, 2020, when she did not show up for work on that day.[3] *Id.* at ¶ 31.

Ruiz initially filed suit against Almanza in the Laredo Division of the Southern District of Texas on May 20, 2022, and on December 22, 2022, Judge Marmolejo granted Almanza's motion to transfer to the McAllen Division as a more convenient venue. *See* Dkt. No. 13. Ruiz alleges that the company violated multiple state and federal laws when it (1) discriminated against her and her daughter in denying her request for work-from-home accommodations, and (2) fired her for requesting and taking paid and unpaid leave in connection to her and her daughter's health conditions. Dkt. No. 1 at ¶¶ 36–56. Specifically, Ruiz brings four causes of action: (1) violation of the Emergency Paid Sick Leave Act ("EPSLA"); (2) violation of the Fair Labor Standards Act

---

[3] June 8, 2020 is the Monday following June 5, 2020—the final day of Ruiz's two-week paid leave.

("FLSA");[4] (3) violation of the Americans with Disabilities Act ("ADA"); and (4) violation of the Texas Labor Code.[5]

Almanza has filed four separate dispositive motions. First, Almanza moved to dismiss Ruiz's Texas Labor Code claim under Rule 12(b)(6) on grounds that Ruiz did not timely exhaust administrative remedies with respect to that cause of action. *See* Dkt. No. 43. Second, Almanza moved for partial judgment on the pleadings on Ruiz's ADA claim that she was terminated because of her association with her daughter. *See* Dkt. No. 49. Third, Almanza moved for partial judgment on the pleadings on Ruiz's ADA claims on the basis that diabetes is *per se* not a disability under the ADA. *See* Dkt. No. 52. And finally, Almanza moved for partial summary judgment on Ruiz's ADA claims on grounds that Ruiz has failed to satisfy the notice requirement. *See* Dkt. No. 55. The Court will address each Motion in turn.

## II. STANDARDS OF REVIEW

### A. RULE 12(B)(6)

A party may move to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with the pleading standard set forth in Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *see Ashcroft v. Iqbal*, 556 U.S. 662, 677–68 (2009). "Thus, claims may be dismissed under Rule

---

[4] While Ruiz's Complaint lists three (3) causes of action—the EPSLA, ADA, and Texas Labor Code—under "Claims for Relief" and does not include the FLSA, it appears that Ruiz asserts an FLSA violation within her EPSLA claim. *See* Dkt. No. 1 at ¶¶ 42–44. Furthermore, in the opening paragraph of her Complaint, she submits that this action is "brought pursuant to" the FLSA, among the other statutes. *Id.* at ¶ 1. The Court therefore construes Ruiz's Complaint as bringing an FLSA claim.

[5] While the substance of Ruiz's Complaint indicates that she asserts four causes of action, *see supra* note 4, the opening paragraph of her Complaint additionally lists one more cause of action: the Families First Coronavirus Response Act ("FFCRA"). But aside from listing FFCRA as one of the statutes that she brings suit "pursuant to," Ruiz otherwise omits mention of FFCRA, including under her "Claims for Relief." *See* Dkt. No. 1 at ¶¶ 36–56. The Court therefore does not construe Ruiz to have made a claim under the FFRCA.

12(b)(6) 'on the basis of a dispositive issue of law,'" and also "if the complaint does not contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *Iqbal*, 556 U.S. at 678). This plausibility standard does not require detailed factual allegations. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). However, a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). To survive a Rule 12(b)(6) motion, the complaint and any other matters properly considered[6] "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court, drawing upon its "judicial experience and common sense," to reasonably infer that the defendant is liable for the misconduct alleged. *Id.* at 678 (citing *Twombly*, 550 U.S. at 556), 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

  **B.**   **RULE 12(C)**

  Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial[.]" Such

---

[6] "Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)); *see also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (explaining that a court's review on 12(b)(6) motion "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.").

motions are "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quotation omitted). "The standard for Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim." *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019). Thus, a court is confined to the pleadings and must accept all allegations as true. *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001).

### C. SUMMARY JUDGMENT

A district court must grant summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the lawsuit under the governing law, and is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party moving for summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings and materials in the record, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed. R. Civ. P. 56(a), (c). Once the moving party carries its burden, the burden shifts to the nonmovant to go beyond the pleadings and provide specific facts showing the existence of a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; Fed. R. Civ. P. 56(c). In conducting its review of the summary judgment record, the court "may not make credibility determinations or weigh the evidence" and must resolve doubts and reasonable inferences regarding the facts in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Dean v. City of Shreveport*, 438 F.3d 448, 454

(5th Cir. 2006).  However, the nonmovant cannot satisfy its burden with "conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence."  *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010); *see also Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.").

### III.   ANALYSIS

In chronological order, Almanza first moved to dismiss the Texas Labor Code claims under Rule 12(b)(6) on grounds that Ruiz did not timely exhaust administrative remedies under state law. *See* Dkt. No. 43.  Almanza next moved for partial judgment on the pleadings on Ruiz's ADA claim that she was terminated because of her association with her daughter.  *See* Dkt. No. 49.  Almanza then moved for partial judgment on the pleadings on Ruiz's ADA claim on the basis that diabetes is *per se* not a disability under the ADA.  *See* Dkt. No. 52.  And finally, Almanza moved for partial summary judgment on Ruiz's ADA claim on grounds that Ruiz has failed to satisfy the notice requirement.  *See* Dkt. No. 55.  The Court considers each argument.

####    A.   CHAPTER 21 OF THE TEXAS LABOR CODE

Almanza moves for dismissal of Ruiz's claims based on the Texas Labor Code on the basis that she has failed to state a claim in light of her failure to timely exhaust administrative remedies under the statute.  The Texas Labor Code instructs that "a complaint under this subchapter must be filed not later than the 180th day after the date of the alleged unlawful employment practice occurred," and that an untimely complaint will be dismissed.  Tex. Labor Code § 21.202. According to Almanza, the latest date that Ruiz could have suffered her most recent adverse personnel action would have been July 31, 2020, in which case her deadline to file with the Texas Workforce Commission would have been January 27, 2021.  Dkt. No. 43 at 3.  And even that date would be untimely because Ruiz's pleadings allege that she filed her charge to the Texas

Workforce Commission on March 15, 2021. Dkt. No. 1 at ¶ 9. According to Almanza, because Ruiz failed to timely exhaust administrative remedies, her Texas Labor Code claims should be dismissed.

In response, Ruiz concedes the point, offering that she "does not oppose the dismissal of her third cause of action under Chapter 21 of the Texas Labor Code[.]" Dkt. No. 51 at 1. However, she observes, and the Court agrees, that while the motion was brought pursuant to Rule 12(b)(6), the proper vehicle to dispose of this cause of action should be Rule 12(c). *Id.* Almanza had moved to dismiss this cause of action on October 19, 2023—well over a year after it filed its Answer back on August 5, 2022. *See* Dkt. Nos. 6, 43. Because a Rule 12(b) motion must be made before a responsive pleading, *see* Fed. R. Civ. P. 12(b), "a post-answer Rule 12(b)(6) motion is technically untimely." *AXA Corp. Sols. v. Lectrus Corp.*, No. 4:15-CV-03606, 2016 WL 6601049, at *2 (S.D. Tex. Nov. 8, 2016). But courts typically construe such post-responsive pleadings motions as one for judgment on the pleadings under Rule 12(c). *See, e.g.*, *Mares v. Wood Grp. Mustang, Inc.*, No. 4:14-CV-00089, 2015 WL 75271, at *1 (S.D. Tex. Jan. 6, 2015) (citing *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); *Mark v. Hickman*, No. 4:17-CV-02784, 2019 WL 5653631, at *4 (S.D. Tex. Oct. 29, 2019). Here, on Ruiz's pleadings, it is clear that she cannot prevail on her Texas Labor Code claims because she has failed to exhaust her administrative remedies. Almanza is therefore entitled to judgment on the pleadings on Ruiz's Texas Labor Code claims.

### B. ASSOCIATIONAL DISABILITY UNDER THE ADA

Ruiz alleges in her Complaint that Almanza violated the ADA by, *inter alia*, "terminating Ms. Cerda de Ruiz's employment because of her disability" and "because of her association with a person with a disability, her daughter." Dkt. No. 1 at ¶ 50. Almanza has moved for partial judgment on the pleadings with respect to Ruiz's association with her daughter under the ADA, arguing that discrimination on the basis of her daughter's health conditions is not actionable under the ADA. On this point, Almanza makes two distinct arguments: (1) that the Fifth Circuit does

8 / 17

not recognize a cause of action for associational disability, and (2) that even if such cause of action existed, the facts pled by Ruiz would, as a matter of law, be insufficient to meet the elements for associational disability. Dkt. No. 49 at 3–4. The Court considers each argument.

### 1. **Whether a Viable Cause of Action Exists**

The ADA, by its text, prohibits an employer from discriminating against an employee as a result of "the known disability of an individual with whom [the employee] is known to have a relationship or association[.]" 42 U.S.C. § 12112(b)(4). While the Fifth Circuit has not ruled whether an independent cause of action for associational discrimination exists, many other Circuits have found that this language does create such a cause of action. *See Garcia v. Oceans Healthcare, L.L.C.*, No. 2:22-CV-00219, 2023 WL 6393885, at *3 (S.D. Tex. Sept. 30, 2023) (collecting authority). And within the Fifth Circuit, many district courts have recognized a cause of action for associational discrimination.[7] *See*, *e.g.*, *Hartman v. Lafourche Par. Hosp.*, 262 F.Supp.3d 391, 398–99 (E.D. La. 2017); *Spinks v. TruGreen Landcare, L.L.C.*, 322 F.Supp.2d 784, 795 (S.D. Tex. 2004). In fact, this Court has joined the list, previously holding that this language creates a cause of action for "discrimination against an individual who is known to associate with a disabled individual." *Ruiz v. Edcouch-Elsa Indep. Sch. Dist.*, No. 7:13-CV-00443, 2014 WL 1385877, at *1 (S.D. Tex. Apr. 9, 2014).

Finding no reason to depart from its prior holding on this issue, and for the reasons explained in this Order as well as in the Court's prior analysis in *Ruiz*, *see id.*, the Court agrees with Ruiz that a claim for associational discrimination "is explicitly provided for in the text of the ADA," namely Section 12112(b)(4).

---

[7] While a few courts within the Fifth Circuit have declined to recognize a cause of action, those decisions are not the result of interpreting the language of Section 12112(b)(4); instead, those courts essentially held that the action is not viable because the Fifth Circuit has not addressed its viability. *See*, *e.g.*, *Balachandran v. Valvtechnologies, Inc.*, No. 4:20-CV-01078, 2021 WL 3639806, at *2 (S.D. Tex. July 30, 2021); *Roth v. Canon Sols. Am., Inc.*, No. 3:18-CV-02196, 2019 WL 4597583, at *5 (N.D. Tex. Sept. 23, 2019).

### 2. Whether Ruiz's Pleadings Are Sufficient

While Almanza contends that there is no claim for associational discrimination, even if such a claim were cognizable, Ruiz "has failed to plead sufficient facts to state a claim to relief that is plausible on its face." Dkt. No. 49 at 2.

In *Grimes v. Wal-Mart Stores Tex., L.L.C.*, 505 Fed. App'x. 376, 380, n.1 (5th Cir. 2013), the Fifth Circuit declined to rule one way or the other on whether there exists a cause of action for associational discrimination "since, even assuming such a cause exists, [the plaintiff] cannot meet the burden that such a claim would entail." But the Circuit instructed that "[a] prima facie case of associational discrimination would require that the Plaintiff show:

> (1) her qualification for the job, (2) an adverse employment action, (3) the employer's knowledge of the employee's disabled relative, and (4) that the adverse employment action occurred under circumstances raising a reasonable inference that the relative's disability was a determining factor in the employer's adverse action.

*Id.* Here, Almanza argues that Ruiz has not met the final element—that she has not pleaded "a showing that the relative's disability was a 'determining factor' in the employer's adverse employment decision," as her allegations "fail to identify any facts reflecting" a bias against Ruiz's daughter. Dkt. No. 49 at 3.

Upon review, the Court agrees with Ruiz that her pleadings contain enough factual support to state a claim. In her Complaint, Ruiz alleges that when she initially requested to work from home, she informed Mr. Guzman that it was "because of her disability and her daughter's disability." Dkt. No. 1 at ¶ 18. And Ruiz had also told Mr. Guzman before then that her daughter could no longer attend daycare in light of COVID-19 policies. *Id.* at ¶ 22. Moreover, when Ruiz sought leave on May 21, 2020, she did so on account "of her and her daughter's medical conditions," and attached a letter from her doctor which recommended that Ruiz work from home because of her daughter. *Id*. at ¶ 24. Almanza terminated her less than three weeks later, *id.* at

¶ 31, without warning or notice. Comparatively, Ruiz asserts that other employees who did not have disabilities or children with disabilities were permitted to work from home. *Id.* at ¶ 21.

In the present case, not only was there a close temporal proximity between Ruiz's request for leave in part due to her daughter's medical needs and her termination, but the manner in which Ruiz was terminated—that is, *sub silentio*, after being told that she could take leave—also gives rise to the inference that Almanza baited Ruiz into taking leave and never actually wanted her to return to work, firing Ruiz to avoid dealing with her and her daughters' disabilities. Together, when construing these allegations in the light most favorable to Ruiz, her pleadings sufficiently indicate a reasonable inference, for Rule 12(c) purposes, that while Almanza purportedly fired Ruiz for missing work, that decision was undergirded by the fact that Ruiz's absence was in part necessitated by her daughter whose disability demanded Ruiz's time and attention.

Because associational discrimination is actionable under the ADA, and because Ruiz's associational discrimination claim is plausible under the facts alleged, the Court will deny Almanza's partial motion for judgment on the pleadings on Ruiz's associational discrimination claim.

### C. DIABETES AS A DISABILITY UNDER THE ADA

Ruiz alleges that she "is an individual with a disability as defined by the ADA" because she suffers from diabetes, which "substantially limits major life activities, including, but not limited to, the endocrine system[.]" Dkt. No. 1 at ¶ 46. Almanza argues that Ruiz's ADA claim with respect to her own medical condition must fail on the pleadings because diabetes is not a *per se* disability. Dkt. No. 52.

The ADA prohibits discrimination "against a qualified individual on the basis of disability[.]" 42 U.S.C. § 12112(a). An individual is qualified under the ADA if she "has a disability within the meaning of [the ADA]." *Atomanczyk v. Tex. Dep't of Criminal Justice*, No. 4:17-CV-00719, 2021 WL 2915030, at *6 (S.D. Tex. July 12, 2021) (citing 42 U.S.C. § 12132).

A disability under the ADA is (a) a physical or mental impairment that substantially limits one or more major life activities, (b) a record of such an impairment, or (c) being regarded as having such an impairment. 42 U.S.C. § 12102(1). And a major life activity, in addition to activities such as eating, sleeping, or walking, "also includes the operation of a major bodily function, including but not limited to . . . endocrine [functions][.]" *Id.* § 12102(2)(B). Federal regulations further explain that for purposes of creating "more generous coverage and application of the ADA's prohibition on discrimination" in a way that is "predictable, consistent, and workable for all individuals and entities" covered under the ADA, "it should be easily concluded" that diabetes "will, at a minimum, substantially limit" the major life activity of endocrine function. 29 C.F.R. § 1630.2(j)(3)(iii). Accordingly, the Fifth Circuit has referred to diabetes as "a condition covered by the [ADA]." *Gosby v. Apache Indus. Servs.*, Inc., 30 F.4th 523, 524–25 (5th Cir. 2022) (citing 29 C.F.R. § 1630.2(j)(3)(iii)).

While the aforementioned regulation and caselaw indicate that diabetes constitutes a disability, the Fifth Circuit has also explained that there is no concept of *per se* disabilities under the ADA. *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 223 (5th Cir. 2011). Determination as to "when and under what conditions diabetes is considered a disability for ADA purposes is a matter of degree." *Id.* (quotations and citation omitted). Diabetes therefore may well be "capable of qualifying as a disability under the ADA," but "an individualized assessment must still take place[.]" *Ridley v. Nw. Louisiana Tech. Coll.*, No. 5:20-CV-01517, 2021 WL 2210594, at *4 (W.D. La. June 1, 2021) (citing *Griffin*, 661 F.3d at 223).

On the basis that diabetes is not a *per se* disability, Almanza argues that Ruiz has not pled a plausible claim.[8] This contention misunderstands the requirements of Rule 12(b)(6).[9] "Whether a plaintiff has a disability under the ADA is ordinarily a question of fact." *Atomanczyk v. Tex. Dep't of Criminal Justice*, No. 4:17-CV-00719, 2021 WL 2915030, at *6 (S.D. Tex. July 12, 2021) (citations omitted). Almanza's argument is essentially that because Ruiz's medical condition is not *automatically* a disability under the ADA, Ruiz's medical condition *cannot* be a disability under the ADA. This logic is flawed on its face, particularly because the relevant federal regulations instruct that diabetes, by its "inherent nature should be easily found to impose a substantial limitation on a major life activity," making the individualized assessment "particularly simple and straightforward." 29 C.F.R. § 1630.2(j)(4)(iv). At the pleadings stage, Ruiz alleged that she has diabetes, and her condition exposes her to high risk from COVID-19 and has substantially limited major life activities, including to her endocrine system. Such allegations are comfortably sufficient for the pleadings stage, and Almanza is not entitled to partial judgment on the pleadings as to Ruiz's ADA claims on this basis.

D.  **NOTICE REQUIREMENT OF THE ADA**

Finally, Almanza argues that it is entitled to summary judgment under any and all claims brought by Ruiz under the ADA on grounds that she "fails to establish the fourth element" of her *prima facie* ADA claim "because Almanza did not have notice" of any disability. Dkt. No. 55 at 2. Ruiz points out that while Almanza apparently seeks to prevail on all of her ADA claims through this argument, Almanza cites the elements of an ADA failure-to-accommodate claim—

---

[8] Almanza also apparently argues that diabetes cannot be a disability if the plaintiff takes corrective measures, such as insulin. Dkt. No. 52 at 3–4. This argument is unavailing because it runs strictly against instructions that "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures." 29 C.F.R. § 1630.2(j)(4)(iv). "Medication" is explicitly included in the relevant list of mitigating measures. *Id.* § 1630.2(j)(5)(i).

[9] Recall that Rule 12(c) motions are evaluated under the Rule 12(b)(6) standard. *See supra* Part II.B.

just one of Ruiz's ADA claims.[10]  Dkt. No. 57 at 7–8.  Ruiz argues that because Almanza has not explained how it is entitled to summary judgment on her other ADA claims, the Court should construe Almanza's summary judgment motion to only reach the issue of whether she has met the fourth element as to notice on her failure-to-accommodate claim.  And on this issue, Ruiz contends that summary judgment is inappropriate because there is a genuine dispute of material fact, which she has established by way of "her own affidavit and supporting documentation[.]"  Dkt. No. 57 at 1.

As an initial matter, the Court agrees with Ruiz that while Almanza purportedly moves to dismiss Ruiz's ADA claims in their entirety, the substance of its partial summary judgment motion levies a challenge exclusively to Ruiz's ADA failure-to-accommodate claim.  Almanza does not address the *prima facie* elements for Ruiz's (1) ADA disability discrimination claim, (2) ADA associational discrimination claim, or (3) ADA retaliation claim.  *See* Dkt. No. 55.  To whatever extent Almanza seeks summary judgment as to those other ADA claims, it has neglected to inform the Court of the basis for its motion, including whether the notice element equally applies for those claims.  The Court therefore only considers whether Almanza is entitled to summary judgment on Ruiz's ADA failure-to-accommodate claim, on the grounds that it is entitled to judgment as a matter of law on the notice element.

To establish a *prima facie* case for a failure-to-accommodate claim under the ADA, a plaintiff must show that: "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations."  *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013).  As the

---

[10] Ruiz "also brings claims under the ADA for disability discrimination based on disparate treatment, associational discrimination based on Plaintiff's relationship with her disabled daughter, and retaliation." Dkt. No. 57 at 8; *see also* Dkt. No. 1 at ¶ 50.

Fifth Circuit explained, "[t]his specific three-part formulation ha[d] not been set out by the Fifth Circuit, but similar elements are present across cases."[11]  *Id.* at 452 n.3.

In the present case, the Court finds ample support in the evidence with respect to the sole disputed element: Almanza's knowledge of Ruiz's disability.  Ruiz avers that "throughout April and May 2020," she discussed her and her daughter's health conditions with Mr. and Ms. Guzman, including the increased risk of complications from COVID-19. Dkt. No. 57-4 at ¶ 7.  When she had first asked to work from home on April 28, 2020, she had told Ms. Guzman about her diabetes and her daughters' lung condition, and how the request was based on the doctors' recommendations given their high-risk status in light of those medical conditions.  *Id.* at ¶ 8.  And weeks later, during the week of May 18, 2020, Ruiz again sought permission on two separate occasions to work from home—once from Mr. Guzman and once from Ms. Guzman—and, in doing so, reiterated her and her daughter's health issues.  *Id.* at ¶ 10.  Without discussing any other summary judgment evidence that might suffice to impute notice on Almanza, Ruiz's affidavit is sufficient.[12]

In its Motion, Almanza points to two main pieces of evidence on the issue of notice.  First, Almanza contends that Ms. Guzman's deposition testimony indicates that Ruiz did not advise Almanza of any disability.  Dkt. No. 55 at 4.  It is true that Ms. Guzman averred that Ruiz never communicated—even after COVID-19 began, including at any point in March, April, May, and June 2020—that she had diabetes or needed accommodations for diabetes.  Dkt. No. 55-1 at 46–

---

[11] On these elements, Almanza relied on *Bennett v. Dallas Indep. Sch. Dist.*, 936 F.Supp.2d 767 (N.D. Tex. 2013), which cited *Mzyk v. N. E. Indep. Sch. Dist.*, 397 Fed. App'x. 13, 15 n.3 (5th Cir. 2010).  As referenced in *Feist*, *Mzyk* is one of the cases with similar elements.  *See Feist*, 730 F.3d at 452 n.3.  While the notice requirement is the second element in *Feist*, it is the fourth element in *Mzyk*.  Compare *Feist*, 730 F.3d at 452 (requiring that the disability was known by the employer) with *Myzk*, 397 Fed. App'x at 15 n.3 (requiring that "the employer had notice of the disability").  When the Court discusses the notice requirement, it does not matter which articulation, as the standards are substantively identical.

[12] As Ruiz argues, she also identified various pieces of corroborating evidence by way of written communications with Mr. and Ms. Guzman about doctor's appointments, which when read in context reasonably support an inference that they had known about her condition.  *See* Dkt. No. 57 at 13–14.

47 (182:15–22, 186:18–187:23). However, Ruiz's aforementioned statements in her affidavit directly contradict this testimony, creating a material dispute of fact inappropriate for resolution at summary judgment. Dkt. No. 57-4 at ¶¶ 7–10. Second, Almanza also appears to argue that Almanza did not have notice of the disability because Ruiz had not provided Almanza with medical records. *See* Dkt. No. 55 at 3–4. While it might be that providing Almanza with copies of her medical records might be sufficient to put Almanza on notice, Almanza points to no authority that such records are necessary. This argument would have the Court hold that even when an employee has "specifically identif[ied] the disability and resulting limitations," *E.E.O.C. v. Chevron Phillips Chem, Co.*, 570 F.3d 606, 621 (5th Cir. 2009) (quotation omitted), employers do not "know" about their employees' disabilities unless and until the employees submit medical documentation of those conditions. Finding nothing in support of such a proposition, the Court rejects this perplexing argument.[13]

On the only disputed element of Ruiz's failure-to-accommodate claim, i.e., whether Almanza knew about Ruiz's disability and its consequential limitations, there is conflicting evidence which creates a material factual dispute. Accordingly, Almanza's partial motion for summary judgment will fail.

## IV. CONCLUSION

Accordingly, the Court hereby **ORDERS**:

Almanza's Partial Motion to Dismiss Texas Labor Code Claims Based on Failure to State a Claim (Dkt. No. 43) is construed as a motion under Rule 12(c) and **GRANTED**. Almanza's

---

[13] On the contrary, courts treat knowledge as if employers have knowledge of the disability when they learn about it as a practical matter—i.e., medical documentation is not required. *See, e.g., Thompson v. Microsoft Corp.*, 2 F.4th 460, 465 (5th Cir. 2021) (no issue as to knowledge where the employer "revealed to his [employer] that he was autistic"); *Callais v. United Rentals N. Am., Inc.*, No. 3:17-CV-00312, 2019 WL 2169182, at *6 (M.D. La. May 17, 2019) (indicating that the employer would have known had the employee updated a questionnaire form); *Feist v. Louisiana*, No. 2:09-CV-07060, 2012 WL 12884815 (E.D. La. Sept. 24, 2012) (the employer had knowledge because the employee informed it of her knee condition, despite that her supporting documentation was decidedly insufficient).

Partial Motion for Judgment on the Pleadings as to Plaintiff's Associational Disability Claim (Dkt. No. 49), and Partial Motion for Judgment on the Pleadings as To Plaintiff's ADA Claims (Dkt. No. 52), are **DENIED**. Almanza's Partial Motion for Summary Judgment as to Plaintiff's ADA Claims (Dkt. No. 55) is **DENIED**.

SO ORDERED February 5, 2024, at McAllen, Texas.

_____
Randy Crane
Chief United States District Judge